

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-1491-09

**WILTON LARRON MAHAFFEY, Appellant**

**v.**

**THE STATE OF TEXAS**

### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE TWELFTH COURT OF APPEALS
### HENDERSON COUNTY

**KELLER, P.J., filed a dissenting opinion.**

I have several disagreements with the Court's opinion, which I will address briefly.

This Court says that the Tyler court's holding means that a driver must signal any movement that is "not a perfectly straight trajectory." I think this overstates the holding, at least to the extent that it suggests that driving on a curved road would require using a turn signal.

The Court says that the Tyler court's holding would require a signal before swerving around a turtle or pulling over for an ambulance. First, so what? There is nothing absurd about requiring signals in emergency situations. Second, there is always the defense of necessity if signalling is not possible. Third, drivers have to signal if they change lanes, even in emergencies, so if the Tyler

court's analysis leads to an absurd result, it has nothing to do with the holding that a merge is a turn.

The Court defers to the Texas Driver's Handbook as an administrative agency's construction of a statute. But the Handbook is not really an administrative determination as contemplated by courts in Texas. Moreover, the Handbook itself says:

> The information herein is not intended to be an official legal reference to Texas traffic laws. It is intended only to explain in everyday language those laws and driving practices and procedures which you need most often when driving in Texas.[1]

Moreover, even if it were proper to employ the Handbook as the Court does, I think it is inaccurate to say that there is an "administrative determination by the Texas Department of Public Safety that the Transportation Code requires a signal for only one type of merge–that of entering a freeway." It does not follow from the fact that the Handbook refers explicitly to only that particular type of merge that other types of merges have been excluded from the signalling requirement.

The Court analogizes this case to *Getts v. State*,[2] but that case is not on point. First, the State in this case does not argue that we should follow the Legislature's intent "regardless of what it wrote." It argues instead that we should construe the actual language of Section 545.104(a) in light of the statute that preceded it. Second, the State is correct. Section 545.104(a) is not an amended statute; it is a codification of a statute. *Getts* did not involve statutes that were part of the codification process.

The Texas codification process, as recognized explicitly in Transportation Code § 1.001, involves the transfer of provisions from the revised civil statutes into "codes" that arrange the statutes in a more logical order, employ a numbering system designed to facilitate citation of the law

---

[1] Tex. Dept. Public Safety, TEXAS DRIVER'S HANDBOOK, *Introduction*.

[2] 155 S.W.3d 153 (Tex. Crim. App. 2005).

and accomodate future expensions of the law, eliminate provisions that are duplicative or no longer

effective, and restate the law "in modern American English to the greatest extent possible."[3]

Transportation Code § 1.001 explicitly provides that the codification program "contemplates a

topic-by-topic revision of the state's general and permanent statute law *without substantive change*."[4]

The Court cites only to the legislative history to express this sentiment, but in fact, the avowed

purpose of codifying the law "without substantive change" is contained within the words of a

statutory provision.  Under *Boykin*, then, we must give effect to the plain language of § 1.001 by

considering the former statute in construing the Transportation Code provision.  It may nevertheless

be true that, if the former statute is ambiguous, the actual legislative intent of that statute may be

accurately and more clearly reflected in the current codified provision.

> The prior statute read in relevant part:

> (a) No person shall turn a vehicle at an intersection unless the vehicle is in proper
> position upon the roadway as required in Section 65, or turn a vehicle to enter a
> private road or driveway, or otherwise turn a vehicle from a direct course or move
> right or left upon a roadway unless and until such movement can be made with
> safety.  Except under conditions set out in Section 24(a) no person shall so turn any
> vehicle without giving an appropriate signal in the manner hereinafter provided.

> * * *

> (d) The signals provided for in Section 69 of this Act shall be used to indicate an
> intention to turn, change lanes, or start from a parked position . . . .[5]

Use of the phrase "so turn" could be read to encompass all of the preceding actions in the paragraph,

or it could be read to encompass only those actions which are denominated a "turn."  If read in the

---

[3] TEX. TRANSP. CODE §1.001(b).

[4] *Id.*, §1.001(a) (emphasis added).

[5] TEX. REV. CIV. ST., Art. 6701d, §68(a).

former manner, then the phrase "so turn" would effectively craft a definition in the statute. If read in the latter manner, then the phrase would simply refer the reader to earlier uses of the word "turn."

It is true that the former reading results in redundancies. But that is the more natural reading of the statute, especially given the language "so turn." Had the legislature intended that the signal requirement not apply to moving left or right on a roadway, I believe the statute would have said instead "no person shall turn." It strikes me as odd and unlikely that the legislature would list a number of actions in a single statute, and in that same statute, except one action out from the strictures applied to all the rest without doing so explicitly.

I respectfully dissent.


FILED: June 30, 2010
PUBLISH